Good morning, your honors. May it please the court, Alyssa Bell on behalf of Mr. Saterstad. I'd like to begin this morning by discussing the district court's failure to allow Mr. Saterstad's expert to testify at trial. I'd like to start by giving the court some context that I think may otherwise be buried in the record. By the time Mr. Saterstad gave his expert notice, this case had been on the court's docket for about four years. There had been 13 continuances granted. Saterstad was a fairly demanding pro se litigant who had asked quite a lot of the court's time and resources. So there was a certain level of frustration or perhaps fatigue on behalf of the district court at the time that this issue came before the court. And although Mr. Saterstad's notice was surely untimely and it was defective under Rule 16 in several respects, it was not so wholly deficient as the government would have the court believe. Mr. Saterstad had, for example, filed a declaration from his expert just a week prior in the context of his suppression motion. And that declaration set forth his qualifications and his substantial expertise. Counsel, even if we were to agree with you for the sake of argument that the district judge erred in striking, where in the record, either before the district court were on appeal, is there any evidence as to what Mr. Smith could have testified to that would have impacted this case? I mean, as I understand it, the testimony would have been about VPNs and the electronic search, but there were hundreds of or thousands of images found on devices seized from the defendant's bedroom. What is it that this testimony could have done that would have made this error, if it was an error, harmful? And where in the record can we find it? I can't find anything where it says what this person would have testified about that would have in any way impacted what was found in the bedroom. Thank you, Your Honor. The best that I can point you to would be excerpts of Record 159 to 161. And that is where Mr. Satterstad made clear that what Mr. Smith would testify to would be the FTK reports. And the FTK reports, just to be clear about what that is, a forensic toolkit is an imaging software that the government used to make images of Mr. Satterstad's devices. And he proffered that this expert's testimony was essential to his being able to challenge those forensics. And, in fact, he had a colloquy back and forth with the district court at Excerpt of Record 181, where he explains that he could not challenge the government's evidence effectively if it was presented in the way that the government had produced it to him in discovery. And that, in fact, Mr. Smith had produced it in a different manner, and he was seeking to have that evidence put forward. I'm sorry. I see you're trying to interrupt me. Please go ahead. No, no, no, no. I was just going to say I've read that. But I don't see anything in the record that would go to what was on the digital devices that were seized, which the district court found 100,000 images of child erotica, 5,700 images and 1,000 videos of child pornography taken from his bedroom, with evidence that he owned them, including his resume, a letter, and family photos. I mean, we would have to be able to find something in the record that would demonstrate that any alleged error was harmful. And I can't see anything, even taking into account that your client was pro se and looking at other declarations that the proposed expert filed. I just don't see anything that would allow us to find that any alleged error harmed your client. Well, Your Honor, the prime charge here was one of distribution or receipt of child pornography, as opposed to it was not a simple possession offense. Mr. Smith's declarations demonstrated that Mr. Satterstedt was at least attempting to develop a defense that centered around the government's modification of the Aries Roundup program and how that modification might have made those shared folders accessible to the government beyond his intention to share them. I certainly understand, Your Honor, that this is not a well-developed record in this respect, but that is where Mr. Satterstedt's pleadings and his attempts to make a record must be construed liberally in his favor, given his pro se status. We at least understand that that was his attempt to... I'm sorry for interrupting you, because I want to develop the same area. I have the same struggle as Judge Bennett in, first of all, trying to figure out, generously construed, what his defense or defenses were, and then really trying to find the equivalent of a proffer as to what his expert would say that would reflect the government's expert's testimony. He did generally say, my intention is to basically develop the information necessary to rebut the government's expert's evidence. I guess making a defense that maybe somehow through hacking or other technological issues, really beyond my understanding, that somehow it really wasn't him. But I just don't see enough there, even trying to piece all of the record together, what his expert proffer would really be. It had to be represented by counsel, a proffer to the court that would counter the government's evidence. Well, Your Honor, I think that is not there, and I think the reason it's not there is that the court, again, I believe, perhaps rightfully, was quite frustrated with Mr. Satterstad by the time this issue came to a head, and did not afford him an opportunity to make a proffer on the record at that point. Well, can you tell us what it might be? I mean, I'm adrift, as my colleagues are. Can you give me any kind of cogent explanation of what, if he had made a proper proffer, what it would say? Because it seems to me, if he's got all these devices in his bedroom, with all the images and all the videos, and indeed I think there were even DVDs there, which isn't something that could have been put there by somebody else, how is it possible to pin this on another person outside the household, when there's so much evidence in this defendant's bedroom and personal devices? What possible explanation could there be? I'm not certain that I'll be able to supplement the record or interpret it to the court's satisfaction, but the best I can say is that he was attempting to develop a defense, whereby the government had used the Aries Roundup program in a manner such that he was guilty of a distribution offense, of a receipt offense, rather than, that there was sharing, I guess is what I mean to say, rather than merely possession, and that had to do with whether the government had altered it. That program was altered, the record does reflect that, but altered in a manner that would make files available beyond the user's intended shared files. That is in Mr. Smith's declaration. Well, he got the files from someplace. I take it you're not saying that he produced all this pornography himself. It's hard for me to see how he could avoid a receipt charge since he had them. He got them somehow. Well, I certainly think it's a fair point, Your Honor, but I do think that Mr. Sattersad was precluded from making any kind of record as to what Mr. Smith's proffer would have been. And, in fact, he did have this colloquy back and forth, where he explained the nature of the evidence that he was trying to put before the court and how his expert was, in his view, really essential to his defense, and the court really did say, we are not going to hear that evidence. And there is at least an argument to be made that that would have even fallen in the realm of fact testimony, because it was Mr. Smith who produced these kind of reports, and the district court did not explore that area at all, nor alert Mr. Sattersad, but merely said, this testimony is precluded. This person will not testify. Period. I'm sorry. I'm sorry. Excuse me, judges. I'm sorry to interrupt. This is Wayne Price, the deputy. We lost counsel for the government. Oh, goodness. Okay. Well, let's hold on for a second, Ms. Bell, until the AUSA can sign back on. Okay. I'll let you know when we get her back, Judge. Okay. Thank you. Ms. Bell? Thank you, Your Honor. I was going to ask a question. Yes, please. So we're discussing Mr. Smith's potential testimony. So maybe I'm misrepresenting this, but didn't the judge allow him to testify as a fact witness? I don't believe that's correct, Your Honor. The government made an argument in their brief that it would have been appropriate for him to testify in a fact capacity as he had in other cases. But here, in fact, this case, I believe, is much closer to the situation in United States v. Finley, where there was wholesale preclusion of the defendant's expert, even though that expert was going to offer testimony that was critical to the sole conceivable defense, no matter how far-fetched that defense was, in that case that the defendant ascribed to something called a, quote, was apparently a term of art, unbeknownst to the government, who thought that that was perhaps lay terminology in their insufficient notice of what that expert's testimony would be. I could pivot very briefly if Your Honors have questions about our Fourth Amendment issue. I will say there that the overarching question is, what should be required of law enforcement in a declaration for a search warrant where the home and, you know, the sacred privacy of the home is at issue? Mr. Satterstad below put forward a series of technologies that he contended were capable of falsely associating an IP address with a residence, or at least falsely associating criminal activity with a residence. And it could create a false lead. And I think for the sake of time, I will cabin my argument to a VPN. I think that technology is perhaps the most familiar, but it is a means to create remote access to another location. And the government— Counsel, because you're—so here's my basic question with regard to your Fourth Amendment issue. Even if we were to get past whether the requirements for conducting a Frank's hearing were met, if everything that you say could have been in the affidavit and wasn't, if it was in the affidavit, how would that counter that there is still a fair probability that the evidence sought was in the house? I mean, you say in your brief that it's equally likely that someone within or without the house could have been engaging in criminal activity. I mean, I don't think what you're proffering supports that. But even if that were true, wouldn't there still be probable cause? I mean, probable cause doesn't require more probable than not. It requires a fair probability, right? That is certainly the standard, Your Honor. You're correct. However, in this case, this is not a situation where law enforcement conducted significant additional surveillance or otherwise took additional measures to ascertain whether this criminal activity was linked to this particular residence. It was the IP address and the IP address alone. So if we are assuming for the purposes of argument that it is correct that one of these technologies that Mr. Satterstedt identified as being able to falsely associate the criminal activity with that IP address was at play, then the real link to that physical location is broken altogether. And so I think it really is... No, it's not. How is it broken? Even if we would accept equally likely, which strikes me as a long shot, it still makes a fair probability that, as it turned out to be the case, it's from that address. These technologies that are identified or the possibility that somebody is hijacking a Wi-Fi signal just isn't so common as to support the proposition, I think, that there's not a fair probability it comes from the house where you'd expect it to come from. Well, if it is the sole means of associating criminal activity with a particular address, and it's just as likely that if one of these technologies is at play, that link is entirely broken. I don't think that should be sufficient... If the standard isn't more probable than not, it's a fair probability, how is it broken? Equally likely would say at least it's a 50% chance of coming from the house, and I don't think there's anything to support the proposition that it's equally likely, but even if we accept that, that still means there's a 50% chance it comes from the house. Why isn't that enough? Well, Your Honor, and I think this is where we have to fall back on the jurisprudence in saying that the home is entitled to a heightened level of constitutional protection. That's where we have our greatest expectation of privacy, and so it should be afforded that additional measure. And I will save my last 15 seconds for rebuttal. Thank you, Your Honor. Thank you. Ms. Rahani, I think during the entire time that you were off, we were talking about Mr. Sadas' attempt to introduce his expert witness and what that proffered. We're trying to figure out what the record says about what the expert would testify to. Sure, Your Honor. So good morning, Judge Nguyen. No, reverse. Good morning, Judges Clifton and Bennett. Good afternoon, Judge Nguyen, Ellie Rahani for the United States. I'll start right there where Judge Nguyen pointed out. We were talking about Mr. Sadas' purported expert, Larry Smith. Larry Smith was the defense investigator throughout the case, and it's still unclear to the government what exactly Mr. Smith was going to be testifying to. Mr. Sadas' concedes that the expert notice that he provided was both untimely and defective. No report was ever provided by Mr. Smith to the government. To the best of the government's knowledge, Mr. Smith never even authored any type of report. Counsel, why was it untimely? Your Honor. I understand that counsel conceded that it was untimely, but help me figure out where from the record it establishes that it was untimely. Sure, Your Honor. So the government, you'll remember that this case was originally indicted in 2015, and shortly thereafter the government made demands for any type of expert notices in the government disclosure statement that was filed in late 2015, early 2016. The government, knowing that Mr. Smith had been acting as a defense investigator, presumed that at some point Mr. Saderstad might attempt to notice Mr. Smith as an expert. So the government moved to exclude Mr. Smith on March the 6th, and Mr. Saderstad did not file his notice until March the 12th, which was the morning of trial. I understand the timing. As a practitioner, I would take time deadlines from either a local rule or from an order of the court like a pretrial order saying expert notices, expert disclosures have to be done within a certain amount of time. I tried to look through the local rules. I might have missed it, but I didn't see anything there, and I couldn't find a document that set forth a deadline. I understand late is late in terms of nobody wants to see this, but in terms of untimely, is there anything in the record that actually establishes a date when this was due? No, Your Honor. There was a pretrial motions deadline that was filed at the time of the initial appearance, and I think that there is some 702 and 703. Excuse me, Your Honor. They do provide what the notice has to entail, but the actual timing of the notice, there was no by March 5th or whatever that the defendant had to turn that in. I would submit regardless, Your Honor, that the morning of trial is too late for an expert notice. Certainly after Judge Borden in this particular case, as early as November of 2018, told the parties, this case has lingered long enough. To the best of my knowledge, Mr. Satterstedt is doing things while he's in custody that he's not supposed to be doing, such as trying to get contraband at the jail and tampering with witnesses in other cases, so I'm eager to see this to go to trial. In January of 2019, again, he told the parties, I am eager to see this to go to trial. I've now rearranged my schedule multiple times, and I will not tolerate any additional continuances absent good cause. And certainly at that point, given that the government had noticed Matt Trafford in 2016 and had noticed originally Sergeant Carey in early of January of 2019, Mr. Satterstedt would have been on some sort of notice that he needed to provide his expert documentation. The other thing, Your Honor, and to the point, it's not that there is a deadline. It's the court can clearly infer that Mr. Satterstedt knew that he needed to provide this. Mr. Smith had provided a declaration that opposing counsel had referenced and indicating that that document that had been provided approximately 18 months prior to the motion to suppress, styled as a motion to eliminate, was filed, that that particular declaration that was provided by Mr. Smith, at least 18 months prior, Mr. Satterstedt was under the impression that he might want to use Mr. Smith as an expert, and he still waited and waited and waited until the morning of trial to submit that notice. And I want to push back a little bit on opposing counsel's statement that the government knew about Mr. Smith's qualifications. It's unclear whether Mr. Smith was, in fact, qualified to give the statements that he gave in that particular declaration. The government never had an opportunity to challenge that by voir dire or some other type of dauber type of hearing. And that was the case in United States v. Savant, which was referenced in the answering brief. The government never had the ability to challenge it because the court's ruling was, no, you can't have him testify at all as an expert, as opposed to I'm going to give special solicitude to the government as to how it deals with this expert, his qualifications, and his opinions. The judge just said no. So he didn't interpose an intermediate sanction, which is letting the government deal with the putatively late notice. And, Your Honor, yes, that's correct. Judge Gordon did ultimately determine that both it was untimely and defective because it would have prevented Judge Gordon from doing his gatekeeper function to determine whether this is reliable testimony to begin with. But if you look at what happened with this particular individual, Larry Smith, in United States v. Savant, which was cited in the government's answering brief, the defense in that case also purported that Mr. Smith was an expert in a particular area that happened to be malware, which is not unrelated to what Mr. Satterstad was saying that Mr. Smith was an expert in in this case. And Judge Dawson in United States v. Savant, the district judge, found that Mr. Smith was not qualified as an expert in that particular area and did not allow him to testify. So I think it's not outside the realm of imagination to determine that the government would have had a reasonable basis to challenge Mr. Smith's expertise in any type of VPN software, malware software, hacking software. And I'll be honest, Your Honor, it's still unclear what Mr. Smith would have testified to. To the extent that opposing counsel had noted that Mr. Smith was going to testify about his review of the evidence, and he would have testified in that capacity as a recipient witness, at an excerpt of Record 181, Mr. Satterstad indicated to Judge Gordon, I need Mr. Smith because I don't know where to find the things in the government's report. And Judge Gordon said, well, that's why Mr. Smith is going to be sitting next to you during trial, and he can advise you on that. He can walk you through the steps of what he did and how he got there. And I'll note that Mr. Smith had on a prior occasion made a representation directly to Judge Gordon that he had, in fact, reviewed the government's evidence extensively, the FTK report that was generated. So Mr. Smith, even if he couldn't have submitted his own report, he could have certainly assisted Mr. Satterstad in pointing out where that was in the government's report. And additionally, I'll note that Mr. Satterstad still can't show prejudice, which is, I think, what we're getting at, Judge Bennett. Well, counsel, you say that, that he can't show prejudice. Where's that in your brief? Specifically, Your Honor, where is it in my brief? Because the only place I find even any discussion of prejudice is at page 42, which is a very generalized statement. But I don't see anywhere in your brief that you specifically argue, even if this was error, it was harmless. But maybe I'm missing it, other than what I see on page 42, which is pretty general. No, Your Honor, it's in this section regarding Matt Trafford, and I'm trying to find that. No, I'm sorry. It must have been in the statement of facts, Your Honor. So there's no particular argument on it directly. But let me, I guess, let me elucidate what I meant in the specific facts of it. Mr. Satterstad, to show prejudice, would have to show that there was something additional that he would have cross-examined Matt Trafford, who was the government's expert, to show that the forensic investigation was somehow flawed. But Mr. Satterstad thoroughly examined Matt Trafford on almost every aspect of his direct testimony. He pursued an alternate suspect theory. He challenged the ownership of the devices. He questioned on the origination of the images. And he even went into cross-examination about his own attempts at evading law enforcement by using that Hide My VPN software that Examiner Trafford had found on Mr. Satterstad's computers. In the record, Your Honor, that starts at Volume 4 of Excerpt of Record at 452, and it continues to 466. So when you look at the cross-examination of Forensic Examiner Trafford, you can see that there was no area that Mr. Satterstad can point to that he wasn't able to cross-examine on. And if Mr. Smith was going to be able to assist him, which he did, and the district judge noted that Mr. Smith sat next to Mr. Satterstad the entire time during trial, that would have been the point to do it, and he simply can't show that he would have been prejudiced in any way. You know, our court's precedent in U.S. v. Finley sets a pretty tough standard, and I don't really see where the answering brief engages with that. And if it is true that exclusion is an appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain a tactical advantage, I don't see where the district court ever made those findings, and I don't see where your brief established that those requirements were met. How were they met? Sure, Your Honor. So I'll start with Finley related to the full exclusion of the expert testifying, and Judge Gordon did not exclude Mr. Smith from testifying as a precipient witness at any point. Well, stop there. He was excluded from testifying as an expert, correct? That's correct, Your Honor. And it's because of a discovery rule violation? It was based upon a Rule 16, I would say twofold. One, a Rule 16 violation on the untimeliness, but I would say that Judge Gordon did not, in fact, make this a sanction. Judge Gordon's determination was, your notice is deficient. I can't do the job that I need to do because you didn't give me what I needed. So, yes, it was untimely, but Judge Gordon didn't deny his expert from testifying based solely on untimeliness. He also turned to the merits and said, I'm looking at this particular document that you provided to me, and it doesn't tell me anything about what Mr. Smith is going to testify to. I mean, counsel, are you saying that that exclusion of the expert witness for Mr. Satterstat's violations is not an exclusion under the rule that kicks Finley in? I mean, I don't see how that can be, that Finley isn't directly on point and says exclusion, as Judge Clifton read, is an appropriate remedy for a discovery violation only with willfulness and desire to maintain a tactical advantage. If you're arguing that Finley isn't applicable here, I don't understand your argument. If Judge Gordon, Your Honor, and if Judge Gordon had excluded Larry Smith from testifying solely based on untimeliness, then Finley would have been on all fours. But in fact, Judge Gordon also excluded, and I would say more importantly excluded, Mr. Smith on Delbert, because he said, I don't have enough information to do the gatekeeping role that I need to do to admit this information under the rules of evidence, not under the rules of discovery. So if Judge Gordon had only... Did the judge schedule a Delbert hearing? No, Your Honor, because Mr. Satterstad had filed his notice of expert on the morning of trial. That sounds like a timeliness basis. I mean, I hear what you're saying, but I'm not sure that really gives us solid grounds to say, oh, Finley doesn't speak to this at all. So, what else do you have to say about Finley? Sure, Your Honor, and I would say that this sort of folds in with the motion for continuance, which I noticed that my opposing counsel didn't want to talk about. Mr. Satterstad had obtained... Well, we did give her the opportunity to talk about everything she might have wanted to talk about, just like we may not give you the opportunity to talk about everything. That's just how it goes in oral argument. Sure, Your Honor, and so I will note that it folds in on the fact that Mr. Satterstad was not diligent, and he repeatedly demonstrated to the district judge in this case that he was not diligent. And as direct evidence of this, Mr. Satterstad knew what his expert, his purported expert, was going to testify to at least 18 months prior, because the affidavit that he submitted to the court was dated at least 18 months prior. So, if the court... I know that Judge Gordon did not make an explicit determination that Mr. Satterstad was gaming the system, but this is certainly direct evidence that he was. For 18 months, he sat on his hands knowing exactly what he wanted Larry Smith to testify to, and he didn't provide that to Judge Gordon. And I think that Judge Gordon... Do we have any reason to think Judge Gordon even knew about the Finley standard? Did anybody point it out to him? No, Your Honor, and I'll note that I think that... Did he quote Finley directly? No. But I think it certainly was in the back of his mind, which is why he turned to the merits and determined... We can't tell that without the findings that this was for strategic advantage. We can't really tell whether it was in the back of his mind or not. And, Your Honor, I will note that part of this was... Even under Finley, even if this was a discovery sanction, if you think about what would have been the lesser sanction been to give a further continuance, in which case the government would be even further prejudiced because we were losing our case agent. And so, ultimately, giving Mr. Satterstad the continuance to make his expert notice timely, or at least not untimely, that would have then further prejudiced the government and extended this case further. And I think that that's ultimately where Mr. Satterstad can't show that he was diligent in any type of way. And then if it was a discovery sanction, Judge Gordon did not abuse his discretion. Your Honors, if you have any additional questions, I'm happy to answer them, but I am over time. We would ask that you refrain. Thank you. Thank you. Now let's round you up to a minute. I do appreciate that, Your Honor. So the record reflects that there was no willfulness in Mr. Satterstad's inadvertence in failing to give notice earlier. In fact, he did not understand that he was required to give expert notice and made that quite clear, and the judge made no finding to the contrary. In terms of gaining the system to gain a tactical advantage, there was no element of surprise with Smith. He was a known quantity. He had been assisting in an expert capacity, as the government well knew, for quite some time. So there is really no conceivable tactical advantage here, especially because the court had made it quite clear that there would be no continuance. Whether this was a last-ditch effort to force a continuance, certainly the court made no finding in that regard. Can that be inferred from the record? I would say no, and here is why. Mr. Satterstad had proffered that Smith's testimony would be as to the FTK reports, and the government had, among its witnesses, experts in that software, as well as fact witnesses who were very well versed in the FTK reports at issue in this case. So the idea that the government would have needed to find an additional rebuttal expert and it would have caused a continuance of such length that they would have lost their case agent is really not fairly supported in the record here. With that, I thank you, Your Honor, very much for your time, and I will submit. Thank you very much to both of you for your argument today. The matter is submitted. Judge Clifton, Judge Bennett, should we take five before the last case?
judges: Clifton, Nguyen, Bennett